COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Annunziata
Argued at Norfolk, Virginia


PRESSURE CONCRETE CONSTRUCTION COMPANY
and
NATIONAL UNION FIRE INSURANCE COMPANY
 OF PITTSBURGH
                                          OPINION BY
v.         Record No. 1111-95-1    JUDGE ROSEMARIE ANNUNZIATA
                                        FEBRUARY 13, 1996
TIMOTHY E. COBURN


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            William F. Karn (William B. Pierce, Jr.;
            Williams & Pierce, on briefs), for appellants.

            Karen M. Rye, for appellee.


     In November 1993, the employer, Pressure Concrete

Construction Company, and the carrier, National Union Fire

Insurance Company (together referred to as "Carrier"), filed an

application for hearing seeking to terminate benefits paid to the

employee, Timothy E. Coburn ("Coburn"), and to receive

restitution for amounts allegedly over-paid from March 11, 1992

through November 10, 1993.  Carrier alleged that Coburn failed to

disclose his return to work.  The deputy commissioner terminated

Coburn's temporary total disability benefits, finding Coburn had

returned to work on January 1, 1992.  However, the deputy

commissioner refused to award Carrier restitution.  The deputy

commissioner concluded that Carrier had received notice of

Coburn's return to work, via an application for hearing Coburn

filed in August 1992, yet had paid Coburn without timely seeking

to terminate the payments.  At the hearing, the deputy commissioner also refused to allow two of Carrier's witnesses to testify and denied Carrier's request to cross-examine Coburn's attorney as to her state of mind in preparing the August 1992 application for hearing.  The full commission affirmed.

On appeal, Carrier argues that the commission erred in (1) concluding that Carrier's failure to terminate Coburn's benefits after learning of his return to work precluded restitution under Code § 65.2-712; (2) concluding that Coburn's August 7, 1992 application for hearing discharged his duty to disclose immediately to Carrier his actual return to work on March 11, 1992; and (3) failing to allow Carrier to cross-examine Coburn's attorney and to permit the testimony of two of Carrier's witnesses.  Finding no error, we affirm.

On June 5, 1991, Coburn suffered an injury by accident while working for his employer, Pressure Concrete Construction Company.  Carrier made voluntary payments to Coburn through the end of 1991 which, according to Coburn, were based on an incorrect average weekly wage.  Because of the disputed average weekly wage amount, the filing of a memorandum of agreement was deferred.  Meanwhile, Coburn was released to return to work on January 1, 1992, and he informed Carrier of his release soon thereafter.  Coburn found employment and began working in March 1992.

In order to resolve the dispute regarding the correct average weekly wage, Coburn filed an application for hearing in

- 2 -

August 1992. Coburn's August 1992 application indicated January 1, 1992 as his return to work date. In an August 1992 letter to Carrier, Coburn also made clear that he sought benefits solely for the period from June 5, 1991, the date of the accident, through December 31, 1991, the last day before his release to return to work.

Before the hearing was held, Carrier sent Coburn a memorandum of agreement reflecting the correction to the average weekly wage that Coburn demanded. The memorandum of agreement indicated that payments would commence, retrospectively, on June 13, 1991. However, nothing in Carrier's submission terminated the award on January 1, 1992. The memorandum of agreement was executed by the parties and, on June 7, 1993, the commission entered an award in accordance with that agreement. Thus, the June 1993 award, as reflected in the agreement, was open ended; it set a starting date for benefit payments but no termination date. Carrier did not file a motion to set aside the award, nor did it appeal the award.

Pursuant to the open award, Carrier paid Coburn not only the difference in the average weekly wage for the period Coburn sought benefits, but also weekly compensation following that period. By the end of October 1993, Carrier realized that Coburn had in fact returned to work, so it filed an application for hearing seeking a determination that Coburn had been over-compensated as a result of an alleged failure to disclose his

return to employment as required by Code § 65.2-712.

The deputy commissioner concluded that Coburn's August 1992 application for hearing provided sufficient notice of his return to work and emphasized that, at that time, Coburn was not receiving compensation. The full commission affirmed, noting that the August application indicated Coburn's return to work date and that Coburn had sought benefits for a closed period.

In seeking restitution, Carrier relies on the duty to disclose a return to employment imposed on the employee by Code § 65.2-712. The statute, in pertinent part, reads as follows:

> So long as an employee receives payment of compensation under this title, such employee shall have a duty immediately to disclose to the employer, when the employer is self-insured, or insurer in all other cases, any . . . return to employment or increase in his earnings. Any payment to a claimant by an employer or insurer which is later determined by the Commission to have been procured by the employee by . . . failure to report any . . . return to employment or increase in earnings may be recovered from the claimant by the employer or insurer either by way of credit against future compensation payments due the claimant, or by action at law against the claimant.

The commission correctly concluded that Coburn met his statutory burden to provide the required notice under § 65.2-712, through his August 1992 application. Carrier's contention that the August 1992 notice of actual return to work was insufficient because it came five months after Coburn actually returned to work is without merit. Although the purpose of Code § 65.2-712 is to place an affirmative duty on employees to disclose their

employment status to an employer or insurer paying compensation, Magic City Motor Corp. v. Helmick, 10 Va. App. 10, 12, 390 S.E.2d 1, 2 (1990), this duty exists only "so long as an employee receives payment of compensation under this title." Code § 65.2-712. We decline to adopt Coburn's position that an employee receiving no compensation is not required to comply with the statute. However, we conclude that the statute cannot be read to place on employees the duty to notify an employer of a return to employment subsequent to the period for which the employee seeks benefits.[1] The employer simply has no stake in the employee's changed circumstances after that point.

When Coburn returned to work in March 1992, he was neither receiving nor seeking benefits for the period subsequent to December 31, 1991. Nonetheless, in the memorandum of agreement Carrier entered in 1993, reflecting the resolution of the average weekly wage dispute, Carrier inexplicably agreed to compensate Coburn for a period which extended beyond his return to work date and for which Coburn did not seek compensation. Carrier did so at its peril because, by that time, it had received notice that Coburn had returned to work.

The Commission correctly concluded that, even if relief pursuant to Code § 65.2.712 were available on the ground the

---

[1] This conclusion is consistent with the Commission's decision in Wilkins v. Best Masonry, Inc., 70 O.I.C. 245 (1991) (concluding that the purpose of the statute is to protect employers from paying compensation during the period in which the claimant "is earning wages that affect the compensation rate").

employee failed to give the requisite notice, the plain language of the statute limits the available remedies to a credit against future compensation or for an action at law. The section does not give the commission authority to order restitution as requested by the Carrier.

Because we conclude that Coburn provided sufficient notice of his return to employment and that Carrier is not entitled to relief under Code § 65.2-712, we need not address Carrier's first assignment of error concerning its right to an independent remedy under Code § 65.2-712. We further find that the testimony of Carrier's representatives is irrelevant as to whether the August 1992 documents constituted sufficient notice. The receipt of the documents was acknowledged. As such, the testimony in question would have concerned only the contents of the documents, which speak for themselves. Similarly, the intent of Coburn's attorney is irrelevant since the issue turns on whether notice is apparent from the face of the documents.

Accordingly, the decision of the commission is affirmed.

Affirmed.