## Alexandria
SENECA FALLS GREENHOUSE & NURSERY, et al.

v.

CHARLES G. LAYTON

No. 1696-88-4

Decided February 27, 1990

COUNSEL

Benjamin J. Trichilo (Lewis, Tydings, Bryan & Trichilo, on brief), for appellant.

Lawrence J. Pascal (Ashcraft & Gerel, on brief), for appellee.

OPINION

MOON, J.—Seneca Falls Greenhouse & Nursery and Florists Mutual Insurance Company seek reversal of an award of compensation and disability payments to Charles G. Layton. We affirm the award because we find credible evidence to support the commission's decision.

The first issue deals with Rule 2(A) of the Industrial Commission which provides that the request for review "should specify each determination of fact or law to which exception is taken," and must be made within twenty days of the deputy's decision. Appellants argue that the deputy commissioner found that Charles G. Layton was suffering from an ordinary disease of life and did not sustain an injury by accident. Appellants contend that the only issue before the full commission was whether claimant was suffering from a compensable occupational disease.

In claimant's request for review, claimant took exception to the deputy's finding that (1) "the employee's anxiety/panic attack is an ordinary disease of life, and (2) the medical records amply demonstrate that Charles G. Layton's pre-existing panic disorder

was aggravated by his work-related exposure to Resmethrin and that Resmethrin did not organically cause Mr. Layton's symptoms but was a result of [a] psycho-organic syndrome."

Appellants argue that this review request did not sufficiently specify an exception to the finding of fact that there was no compensable injury and, therefore, the commission erred in reversing the deputy's finding of fact and in finding that there was a compensable injury. Although Mr. Layton's appeal did not expressly challenge the finding that there was no injury by accident, we find that, in questioning the finding of fact that he suffered an ordinary disease of life, he likewise implicitly questioned the finding that he did not sustain a compensable injury. We hold, therefore, that the full commission did not err by granting Mr. Layton's request for review.

Appellants further argue that the requirement of specificity in Rule 2(A) has been applied without exception to employers and their insurers but not to claimants. In *Ernest Long v. Westmoreland Coal Co.*, 65 O.I.C. 348 (1986), the commission acknowledged that it did not look upon this rule as being mandatory in all cases because of the rule's use of the word "should" rather than "shall." The commission opined that the word "should" was used in the rule because many claimants appear before it *pro se* and may be unable to identify the specific legal issues. We do not read *Long* to be a ruling by the commission that it would not apply the rule to a *pro se* claimant but would apply it to all other parties. The example given by the commission was only illustrative as to why the rule should not be applied without exception. In *Long*, the commission did not apply the rule to Long by dismissing the appeal. Rather, because of the failure to comply with Rule 2(A), the commission, as a sanction, refused Long's motion to submit oral or written argument and treated the claim as submitted on the record.

This Court has agreed with the commission's holding in *Long* that Rule 2(A) does not create an absolute requirement that parties specify each determination of fact or law to which exception is taken. *See Brushy Ridge Coal Co., Inc. v. Blevins*, 6 Va. App. 73, 78, 367 S.E.2d 204, 206 (1988). We agree, however, with appellants' contention that the rule must be applied equally to all parties irrespective of whether they be claimant or employer/insurer. The Fourteenth Amendment declares that all per-

sons, including corporations, irrespective of status, are entitled to the equal protection of laws. *Santa Clare County v. Southern Pacific Railroad*, 118 U.S. 394 (1886). Thus, if the Industrial Commission imposes sanctions for the failure to follow the specific provisions of Rule 2(A) dealing with specification of the exceptions, the sanctions may not be applied arbitrarily to parties based upon their position in the case or whether they are represented by counsel.

Appellant cites *Classic Floors, Inc. v. Guy*, 9 Va. App. 90, 383 S.E.2d 761 (1989), wherein a panel of this Court upheld the Industrial Commission's invocation of Rule 2(A) to bar an insurer's cross-appeal which was not filed within 20 days of entry of the order appealed from. However, *Guy* concerned a different provision of Rule 2(A) than does the present case — the 20 day filing requirement. We have no evidence that the time bar provision is not applied equally and mandatorily to all parties.

If the specificity requirement of Rule 2(A) has not been applied consistently to all persons in the past, irrespective of their position, be they claimant or employer/insurer, the Rule, nevertheless, should not be applied to bar Mr. Layton's appeal since we agree with the Industrial Commission that the provisions of Rule 2(A) at issue in this case do not require specification in all cases. In other words, the appellants are not aggrieved by the ruling of the commission.

The second issue is whether there was credible evidence to support a finding that Mr. Layton's disability was a result of an industrial accident. The evidence shows that on July 11, 1987, Layton was working in the greenhouse with an aerosol insecticide, Resmethrin P.T. 1200, for the purpose of destroying insect pests. While removing the cap from a canister of Resmethrin, the canister slipped in his hand and the insecticide sprayed into his face and eye. He immediately flushed his eye with water. He washed his eye and face with soap and water. He then returned to his duties with the canisters in the greenhouse. He experienced immediate blurred vision, which continued until the next day. On the second day after the incident he developed a headache. On the third day he began his vacation with a trip to the beach. At the beach he experienced vertigo, characterized by a feeling that he was walking on balls of cotton. The headaches continued and were accompanied by attacks of nausea which developed suddenly. He

sought medical attention while on vacation at the beach. Upon his return home, he reported the incident to his employer and sought medical treatment from a physician. That physician, as well as numerous others, did not believe that the chemical which Layton got in his eye had caused his nausea and vertigo. On July 28, 1987, he was admitted to the Northern Virginia Doctors' Hospital for further studies. He was discharged with a diagnosis of "dizziness, vertigo following acute exposure to Resmethrin, chronic and long term exposure to organophosphates, and post lumbar puncture headache."

Because Layton continued to complain, he was referred by his physician to Johns Hopkins University for further testing. The tests generally supported the conclusion that Layton's chronic pesticide exposure to organophosphates other than Resmethrin were not the cause of his problems. As a theory, it was advanced that claimant could have "sympathetic hypersensitivity to orthostasis (standing) and this postural conduct together with exposure to organophosphates may in part account for some of his symptoms." On October 8, 1987, Dr. Kern Bolla-Wilson, a neuropsychologist, saw Layton at the request of his treating physician. She and an associate concluded that the claimant "is currently suffering from panic attacks related to the trauma, associated with his incident with the insecticide."

■ Although the commission could have found from this evidence that the disability of Mr. Layton was not related to the incident involving the chemical, the report of Dr. Bolla-Wilson was sufficient evidence from which the commission could have found that the panic attack was directly caused by the injury to his eye. Emotional harm following physical injury is compensable, even when the physical injury does not directly cause the emotional consequence. *Burlington Mills Corp. v. Hagood*, 177 Va. 204, 211, 13 S.E.2d 291, 294 (1941); *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1353 (E.D. Va. 1987).

■ Appellants complain that Dr. Bolla-Wilson was not a credible witness because, unlike the other experts in the case, she was not a medical doctor. This fact does not bar her from giving an expert opinion but goes only to the weight of her testimony. *See Lakeside Inn Corp. v. Commonwealth*, 134 Va. 696, 701, 114 S.E. 769, 771 (1922) ("The law . . . in a proper case, requisitions the expert in every field of human knowledge. . . ."). The weight

to be given an expert's opinion is solely for the trier of fact. In matters which are not of common knowledge, the court must accept the opinion of experts, and the manner in which their opinion is weighed has nothing to do with its admissibility. *See Walrod v. Matthews*, 210 Va. 382, 389, 171 S.E.2d 180, 185-86 (1969).

Accordingly, the judgment of the Industrial Commission is affirmed.

*Affirmed.*

Coleman, J., and Duff, J., concurred.